number 13-4619. Ms. Snyder, Ms. Damiano, and take your time. Justin. A few days. By the way, are you appearing pro bono in this case? Yes. Okay, thank you very much. May it please the court. Good morning, my name is Courtney Snyder. Sitting at your right is Ms. Damiano. At the counsel table with me today is my colleague, Haley Haldeman. We are pro bono counsel for the petitioner, Luis Fernando Estela-Gomez. I would like to reserve two minutes for rebuttal. You surely may. Mr. Estela-Gomez is asking this court today to decide whether an agency can properly resolve an issue without referencing, in its opinion, material evidence or argument presented to it by the alien. Now the Green case has held that not all evidence needs to be discussed. Are we simply to assume that not mentioning the 1994 incident automatically means that it was not properly considered? In this case, Mr. Estela-Gomez asserts that the 1994 incident is material evidence under the BIA's own regulations. It's prior evidence of torture, which the BIA is required to consider under that regulation and also under this court's precedent. Mr. Estela-Gomez is asking this court today to decide whether an agency can properly resolve an issue without referencing, in its opinion, material evidence or argument presented to it by the alien. How does that one assault, that one extortion, rise to the level of torture? Your Honor, we don't know because the BIA never analyzed it, nor did the immigration judge analyze it. And it's Mr. Estela-Gomez's position that they were required to, that evidence was favorable to him. Case law in this circuit requires that the BIA consider favorable evidence to the alien, especially evidence which the alien expressly writes about in his brief, which he did here. He raised it in his brief to the BIA, his brief to the IJ, his application, several statements to the IJ, and in his oral testimony to the IJ. It was an act of violence. He was beaten with bats and sent to the hospital. Are there certain acts of violence which qualify as torture as a matter of law? There is a, there are some regulations, or there's some case law on what constitutes torture. Again, I'm... Are you saying that the beating here as a matter of law constitutes torture? I'm not saying that it constitutes torture. I'm saying that the BIA needed to decide that or at least consider the evidence. But in saying that we have considered everything, don't we accept that they did consider it? No, we shouldn't accept that they considered everything. The Filja v. Gonzalez case states that a formulaic statement such as the one we have considered the entire record is not enough when there is material evidence presented in the record that was not discussed. I'm a former district judge and I know that there are times when I have looked at everything and I don't have the time to sit down and itemize everything I looked at that I would say I have reviewed the entire record. And I, because of that past experience, I am inclined to believe administrative law judges and other fact finders who say we have considered the entire record before us. Yes, Your Honor. In this case, respectfully I would say that the BIA, because the evidence was favorable to the alien, could have constituted torture, was an act of extreme violence. It could have been several sentences, a paragraph. She dedicated six pages to looking at the evidence and didn't mention this once. It was mentioned seven times in the record and there's not one mention of it in the IJA's opinion or the BIA's opinion. And while the BIA or the IJA need not reference every piece of evidence, when the BIA itself in its own implementing regulations states that prior acts of torture shall be considered, and under case precedent about what constitutes torture, an act causing the severe physical or mental pain or suffering is the first factor. This was a beating with bats. Bleeding profusely caused him to go to the hospital. Whether they found that he lacked credibility, whether they found that it didn't amount to torture, they needed to have said that. Did this happen in, what, 94? Yes. And so we're now almost 21 years later and to what extent, for example, is FARC still a significant force in Colombia? Well, Your Honor, there was some evidence that Mr. Estela Gomez presented on the country conditions, which the IJA did consider. And the 1994 incident, that was when Mr. Estela Gomez came to the United States. So it could be said that that's what prompted his departure. And there's nothing in the statute or the case law that says he... back to Colombia now in 2015. And the IJA relied on a lot of evidence that shows that he would not be, or likely would not be, certainly not more than 50% that he would be. His parents are still there, isn't that correct? Correct. And there's no indications of any significant violence against the parents, is there? No. So, and that's just one of a number of things. And, you know, except for this, you know, there was no significant consideration of this 1994 assault in the attempt to extort. But it's a, what, 14-page opinion or so of the IJA? It's a fairly lengthy opinion otherwise. It's six pages, maybe. It's more than that. But the, there seems to, our standard of view, is there substantive evidence to that if this person is sent back, that it's more likely than not that he will be tortured? And what evidence do you have that that's the case? Your Honor, Mr. Stelgomes believes that had this incident, which is the first factor under the implementing regulations that the BIA is required to consider, that had they considered this factor and required to consider all evidence, that it could have changed the outcome of the analysis. Simply because they focus on his co-conspirator and what happened there. The fact that she, that the IJA doesn't recognize any prior acts of violence against Mr. Stelgomes himself could change his fear of future torture once he returns. I guess that's sort of the key question for me. Even if that assault were considered in substantial detail, would it really change the outcome here? Yes. It's our position that it could. It's our position also that that's the job of the BIA or the IJA, not the job of this court. And Mr. Stelgomes feels that there's a glaring error here. They failed to consider this evidence. It could have changed the outcome of the case. There's existing case law in this circuit that discusses the fact that the BIA has to at least acknowledge and consider material evidence, evidence that is favorable to the alien, and evidence that the alien expressly recounts in his brief before the BIA. None of that happens here. Let's go back. I'm sorry. No, no, no. I was going to go back to where Judge Ambrose was in the beginning. How do you read our decision in green then? I think it's all going to depend on the individual facts of each case. So it doesn't mean that green is wrong. It simply means that just because every single time, every time the BIA says or the IJA says, I reviewed the entire record, there is no evidence of torture. That's all they said here. But under NB Plain, under Fay and Zhu, they have to consider material evidence, and if they're going to reject that material evidence, they have to say why. And so the only evidence here in the record on, you know, an act of violence against Mr. Oselegomes himself, other than threats of violence, was this beating incident. So the BIA should have looked, their job is to look at the record as a whole, and your job as an appellate court is to be able to look at that and say, on the basis of their opinion, we believe that the BIA heard the issues that Mr. Oselegomes raised and thought about them rather than merely just reacted. And that's not evident from the face of the BIA's opinion here that they did that. Maybe we can just go to the second issue. Didn't Mr. Oselegomes concede ineligibility for withholding of removal in his hearing before the IJA? The record is extremely confusing. So initially, Mr. Oselegomes conceded removability on the overstay of his visa and disagreed with removability based on the aggravated felony conviction. It appears that the IJA found him removable based on the drug conviction and not the theft conviction. And there's evidence in the record that he did not pursue his withholding of removal claim under 241B or his asylum claim, and he pursued his cat claim only. But even under cat, there's another analysis there where if he's eligible for cat relief, that there's either he gets granted cat relief or there's this mandatory denial based on an aggravated felony conviction. And under that statute, then, he has the ability to then say to the court or say to the agency, by a preponderance of the evidence, that doesn't constitute an aggravated felony. So even here, on whether he conceded withholding of removability or not, it doesn't really go to whether his arguments on the aggravated felony are relevant to his cat claim still. So I still think the record is unclear, and the IJA's decision itself, it doesn't say anywhere if she's holding him ineligible for withholding based on the aggravated felony drug conviction, on the theft conviction. So it's entirely unclear. All right. Let me go back to your main argument. What is torture under case law? For an act to constitute torture, it must be an act causing a severe physical or mental pain or suffering intentionally inflicted for an illicit or prescribed purpose by or at least at the instigation of or with the consent or acquiescence of a public official who has custody or physical custody of the victim and not arising from lawful sanctions. And you're on the by or with the approval or acquiescence of the government, remember FARC was not the government, then your argument would be what the police officer that showed up really was reluctant to investigate any further? Your Honor, I'm not arguing if this constitutes torture or not. My position and our position is that that was the BIA or the IJA's job to determine whether this is torture. There's no indication they don't perform this analysis. I'm not able to perform the analysis. But the point, so really what you're arguing is procedure. Yes. Because if something, and we get a lot of CAD claims here, if something doesn't appear to be torture on its face in terms of the definition that you just read and somebody didn't consider it, then really the next question is, well, if there were an error, wasn't it harmless? And I would point out that in the immigration context, error is harmless only where it is highly probable that the error did not affect the outcome of the case. So here we can't say that it's highly probable it didn't affect the outcome of the case. I realize it's tough here, but based on what he has alleged, don't you have to make a fairly convincing argument that that was torture in order to have that non-consideration by the IJA become significant for purposes of procedure? I think Mr. Estela-Gomez raised the incident at multiple points because he or his counsel at the time believed that that incident could rise to the level of torture. That's why it was raised so often before the IJA and then again to the BIA on appeal. So Mr. Estela-Gomez believed that incident was a violent one that could rise to the level of torture. And he deserved an opinion that set forth, if that was in fact why the BIA discounted, he deserved an opinion that set forth why. And not just because I say so, but because this court's precedent says so. Okay. Thank you. We'll hear from Ms. Damiano and get you back for rebuttal. May it please the Court, Liz Damiano on behalf of the Attorney General, good morning to you all. As your honors have stated, this case involves two issues. And the first one is whether the agency properly considered all of the record evidence in this case. Well, in this case, the 1994 incident, in what would be an otherwise fairly comprehensive opinion, just really just dropped the ball here, didn't it? You're correct, your honor. The agency did not mention the 1994 beating that Petitioner raises. However, as Petitioner concedes, the immigration judge dedicated six pages of a 14-page decision. The decision was 14 pages, six pages of which were dedicated to examining the evidence. The judge went through each exhibit. Then the judge summarized the testimony of the petitioner. Then the judge went through all of the affidavits and voted a paragraph to each affidavit. After doing so, the judge took the evidence and determined, one, that Petitioner was not tortured in the past. And two, none of the incidents that have been presented to the judge rose to the level of a clear probability of torture in the future. That six pages of examining the evidence before the judge came after the judge said that she, quote, all evidence and testimony has been considered, even if not specifically addressed here in this decision. The judge later stated on the next page, this is at 232 and 233 in the record, the judge stated that there was, quote, nothing that was excluded from her consideration of Mr. Gomez's claim and nothing she neglected to review. So as Judge Roth said, this judge had a lot of evidence. She spent six pages summarizing the evidence. Now, could she have done a more thorough job? Yes. She could have listed the 1994 beating. It was a serious incident. But there's a presumption here, based on the explicit words of the judge, that she considered all of the record evidence, including the beating, and she determined, first, that there was no evidence of torture, and that, two, none of the incidents rose to the level of showing a clear probability of future torture. And if you actually look at the decision, she focuses her decision on the events most relevant to the future likelihood of torture. She says, petitioner has not been threatened in the United States over these last 20 years. The last threats occurred in 1994 that we know about. The judge says there have been no incidents of threats since he's been in the United States. Petitioner's parents are safe in Colombia. They have remained unharmed these last 20 years. And then the judge goes on to the issue of Diego Vasquez, which is very relevant to a future likelihood of torture, mentions Diego Vasquez and the list of assumptions that one would have to jump across in order to get from point A to point B to show a clear probability of torture. She says that Diego Vasquez was a friend and acquaintance, and that petitioner believes that he was killed in the manner that FARC kills individuals. There's no confirmation of that. We know he was killed in Colombia. We don't know how he was killed, except that petitioner says that it was in a manner that was consistent with FARC killings. And then he jumps to the next assumption, that is, well, if he was killed by FARC in that manner, he must have been working with FARC, and therefore he must have left assets of the criminal enterprise in the United States when he fled to Colombia. And therefore FARC must have killed him because of that reason, and therefore FARC must know that I testified against Diego in the United States, and therefore FARC will kill me. So the judge says this is what happened to Diego, and this is an awful lot of supposition to reach the burden of showing a clear probability of future torture. On this record and on this decision, we feel that not only did the immigration judge show that she considered the entire record, but she also, we would assert that she also, deduced that the evidence in Mr. Gomez's past did not amount to future torture. And that's that statement in the decision that states there was no torture. Now petitioner makes much of the fact that it's omitted, and petitioner alleges that the agency ignored evidence or treated the incident in question as if it didn't occur. But petitioner's quarrel is really with the robustness of the decision or the thoroughness of the agency decision. And as Your Honors mentioned, under the Green case in this court, the judge's opinion is not required to specifically address and mention every individual piece of evidence. Only that the judge... Well, this was a pretty significant piece of evidence. I mean, just like this was just, I don't know what happened, but you would think this would be one of the first things that you would want to address. Absolutely, Your Honor. We can see that it's a serious incident in his past, in his past 21 years ago, and that we feel that because the judge was very explicit in stating that she considered all of the evidence and then went on to discuss the evidence for six pages, even though she didn't mention this one significant incident, that doesn't mean she ignored it, and that doesn't mean that she treated it as if it never occurred. What do country reports currently say with regard to the relevance of FARC in Columbia? FARC is still a presence in Columbia and has been for over 40 years. Isn't it a reduced presence from what it used to be? Oh, absolutely, Your Honor. It is a reduced presence, and the government has done quite a bit to try to stop FARC from committing killings, kidnappings. But I'm not going to say that it has stopped, that all the violence has stopped. FARC is still a presence. They still deal in the drug trade, and there are still kidnappings and killings, but to a much lesser extent than there used to be, and the government has better control over the circumstances now with FARC than they did 10, 20, 30 years ago. On the second issue, the second issue being the failure to address petitioner's motion to supplement his brief, as our opening brief states, we argue that the issue is moot because the board addressed it in its January 22, 2014 decision. But even so, even if the court doesn't agree with our mootness argument, there is no prejudice here because, as you said, the petitioner waived withholding of removal before the judge, and the record is not confusing on that point. The judge asked counsel, and he also asked petitioner himself separately, and that's on page 321 and 322 of the record, if he understood that he was proceeding on convention against torture relief only and not proceeding on withholding of removal. And he said that he was aware he was only proceeding on his cat claim. Petitioner was represented by counsel at the time, and to the extent that he tried to later make arguments to show that he was eligible for withholding of removal, he waived that relief before the judge. So any remand to address his arguments related to his aggravated felony conviction would be irrelevant because he waived withholding of removal relief. Thank you very much. If you have no further questions, I just would like to say, Respondent, we ask the court to deny the petition for review because the agency considered all the record evidence and the arguments raised in his motion to supplement our moot. Thank you. Thank you. May it please the court. Respondent quotes all of the language the IJ put in her opinion here. She carefully considered the record. She considered it again, even if it wasn't mentioned. It sounds like from that, all we're saying is if the IJ puts all of this language in their opinion, then it's not subject to review, and that's just wrong. You're right, but there is a concept of harmless error that it is subject to review. It should have been reviewed, as noted by Ms. Damiano. It's a serious incident. But when you look at all the other things that exist here, you know, the parents are living there, all the various suppositions that one has to go through to thread a possible claim that Mr. Vasquez was somehow with FARC, and much more. You're asking us to, in effect, say that the IJ was wrong, that this case could be greater than preponderance of the evidence showing that there was a torture, when, as I said to you before, there's a pretty good argument that this isn't even torture to begin with, let alone that the torture would continue if he were to go back. Your Honor, respectfully, we're asking you to hold that this is an error of law, that no factual determination was made on the point of torture. But are you saying there's no harmless error analysis that can be done here? There is, and it's that the higher probability outcome would not change, and I don't think this Court can say that. Well, if I'm right, and I'm not saying I am, but if I'm right that this incident in 1994 was not torture in and of itself, then you can't win, can you? I disagree. Okay, but why? Because this incident could be torture. Yeah, I guess if it's not torture, then we don't win, but it could be torture, and considering that the FARC went after him 20 years ago, just because it's 20 years ago, there's nothing in case law or statute that says the length of time that has passed makes anything less important. The FARC at that point was attempting to extort money from the fathers? Attempting to extort money from the father, but went after Mr. Estela Gomez and beat him with bats. But after he left, were there any incidents where there were further attempts to extort money from the parents? According to Mr. Estela Gomez, there are still threats against his parents. Their business hasn't dissolved, so I'm not aware if it's because maybe they have the money that they haven't gone after him. But he did recount some testimony where his parents still feel threatened. They feel like they can't go out of their house. His sister has since moved to Australia. His parents have tried to move, but are unable to move. So considering this as a factor could change the analysis. And quite honestly, Your Honor, if I could just, I know I'm done with my time. Go ahead. But the regulation is a shall, not a may. And the respondent here says, well, they probably considered it, even if it wasn't mentioned. No, they shall consider it. It needed to be mentioned, and it wasn't. And so for that reason, we would ask the court grant the petition, vacate the order of removal, and remand to the BIA for further proceedings. Thank you. Thank you very much for both counsel for well-presented arguments. Also, I especially thank the counsel, Ms. Snyder, and I'm sorry, who's with? Ms. Hoffman. Both of you for taking this matter on pro bono. You did an excellent job, and we very much appreciate it. Very helpful to us. Before we take a five-minute break, we're going to take the next case and then take a break before we set up the video for the final case. So I'm going to call the third case.